# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | | |
|---|---|---|
| **United States of America,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Criminal Action Number** |
| | ) | **15-00405-01-CR-W-DW** |
| **Ray E. Kelly,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

Pending before the Court is the MOTION TO SUPPRESS EVIDENCE [Doc. #19] filed on March 3, 2016, by defendant Ray E. Kelly ("Kelly"). On May 25, 2016, the undersigned held an evidentiary hearing on Kelly's motion. Kelly was present and was represented by his counsel, Federal Public Defender Stephen C. Moss. The government was represented by Assistant United States Attorney Bruce A. Rhoades. At the evidentiary hearing, three witnesses testified: Sergeant Donie Hoffman and Officers Charles Chambers and Daniel Quiles, all with the Kansas City, Missouri Police Department. Additionally, the following exhibits were admitted into evidence:

| Number | Description |
|---|---|
| Gov't. #1-12 | Photographs |
| Gov't. #13 | Application for search warrant |
| Gov't. #14 | Search warrant inventory report |

On the basis of all the evidence adduced at the evidentiary hearing, the undersigned submits the following:

## PROPOSED FINDINGS OF FACT

1. Charles Chambers and Daniel Quiles are police officers with the Kansas City, Missouri Police Department. Tr. at 2-3, 28-29.

2. On December 11, 2015, at approximately 9:00 a.m., Officer Chambers was on car patrol when he received a radio request to respond to the area of 3008 Hunter Avenue to investigate a suspicious party complaint. Tr. at 3-4, 11, 17-18.

3. Officer Quiles, and his patrol partner Officer Jeff Bauerle also received the radio request. Tr. at 4, 29-30.

4. The police had received reports regarding a black male walking around naked on the street and yelling. Tr. at 4-5, 30.

5. Officers Chambers, Quiles, and Bauerle all arrived on the scene at the same time. Tr. at 5.

6. After the officers arrived, neighbors approached the officers and told them that the naked man had gone into a nearby wooded area around a ravine. Tr. at 6, 31.

7. In exploring this wooded area, the officers found a naked black male – later identified as Kelly. Tr. at 6-7, 17, 19.

8. When the officers got close to Kelly, they detected the smell of PCP. Tr. at 8, 33, 42, 45.

9. The officers placed Kelly in handcuffs for officer safety and covered him with a blanket. Tr. at 8, 17, 21-22, 32, 40.

10. The officers also called for an ambulance. Tr. at 9, 18, 34.

11. The officers asked Kelly if he had smoked any PCP and he stated that he "had one stick." Tr. at 9, 19-20.

12. After the ambulance arrived and the EMTs began examining Kelly, the officers received additional information that someone had called the police to report that the front door to Kelly's residence was standing open, that Kelly lived with a female and two children, and that the female and two children had not been seen that morning. Tr. at 10-12, 20, 27, 34, 40, 42.

13. The officers decided to go to the residence to make sure that there were not crime victims in the home. Tr. at 10, 21, 23, 36, 42-43.

14. Upon arriving at the residence, the officers saw that the front door was standing open and the storm door was also open and blowing around in the wind. Tr. at 12, 22, 26, 35, 41.

15. The officers announced "Police" and entered the residence looking for people. Tr. at 12, 23, 35-36, 42-43.

16. While walking through the residence, the officers observed drug paraphernalia. Tr. at 12, 37.

17. Specifically, Officer Chambers saw little brown glass bottles and "More" cigarettes on the kitchen table. Tr. at 14, 23-24.

18. Based on his experience as a police officer, Officer Chambers knew that the glass bottles were the type that PCP was held in and that "More" cigarettes were often used for dipping PCP. Tr. at 14, 15-16.

19. Officer Quiles observed an open black bag, a jar, and green leafy substance on top of a bed and detected a strong odor of PCP coming from the same bedroom. Tr. at 37, 43, 45.

20. The officers then contacted a detective. Tr. at 14.

21. Detective (now Sgt.) Donie Hoffman with the Kansas City Missouri Police Department was contacted on his cell phone by the officers and told about Kelly walking nude in the street, about the search of Kelly's residence to check on the welfare of the other inhabitants, and about the observation of purported PCP and marijuana in the residence. Tr. at 48-50, 71-72.

22. Based on this information, Det. Hoffman applied for and obtained a search warrant for the residence. Tr. at 50-52.

23. Det. Hoffman and other law enforcement agents then traveled to the residence and conducted a search and seized several items of contraband. Tr. at 52-64.

24. Det. Hoffman subsequently interviewed Kelly who, after being apprised of his *Miranda* rights, made voluntary incriminating statements. Tr. at 64-71.

## PROPOSED CONCLUSIONS OF LAW

In his motion to suppress, Kelly raises a single issue, namely that evidence in this case must be suppressed because Officers Chambers, Quiles, and Bauerle conducted an unconstitutional warrantless search of Kelly's residence. Without question, individuals possess a privacy interest in their property that is protected by the Fourth Amendment. *See*, *e.g.*, *United States v. Gwinn*, 191 F.3d 874, 878 (8th Cir. 2000). As protection for the citizen from unwarranted government intrusion, the Fourth Amendment generally requires law enforcement to obtain a court-sanctioned search warrant based on probable cause before undertaking a search of private property. *See*, *e.g.*, *Shade v. City of Farmington, Minnesota*, 309 F.3d 1054, 1059 (8th Cir. 2000). Those privacy interests are particularly enhanced when a search of an individual's domicile or residence is at issue. *See*, *e.g.*, *Welsh v. Wisconsin*, 466 U.S. 740, 748, 104 S.Ct. 2091, 2097 (1984) ("It is axiomatic that the physical entry of the house is the chief evil which the wording of the Fourth Amendment is directed.").

3

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ." U.S. CONST. amend. IV.  As made clear in the Fourth Amendment, however, the constitution does not forbid all searches and seizures, but only <u>unreasonable</u> searches and seizures.  *Elkins v. United States*, 364 U.S. 206, 222, 80 S.Ct. 1437, 1446 (1960).  In many search and seizure scenarios – particularly where a person's residence is involved – the question of legal authority (as well as reasonableness) is presumptively satisfied by a judicially-issued warrant.  In this case, law enforcement officers did obtain a search warrant, but only after the officers had already walked through the residence.  Kelly argues that this initial entry violated the Fourth Amendment and, thus, taints the validity of the subsequently obtained search warrant.  Under the facts presented, the Court disagrees.

The Supreme Court has cautioned:

> [S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions.

*Arizona v. Gant*, 556 U.S. 332, 338, 129 S.Ct. 1710, 1716 (2009) (*quoting Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514 (1967)).  In the present case, however, the Court concludes that the government pre-warrant entry into Kelly's residence was justified by the exigent circumstances exception to the warrant requirement.

While it is true in most cases that police officers may not enter or search a home without a warrant authorizing them to do so, it is nonetheless settled law, as well as common sense, that emergency circumstances may take precedence over traditional Fourth Amendment concerns and permit law enforcement officers to take actions that might otherwise require a warrant.

4

> Police officers may not enter or search a home without a warrant unless justified by exigent circumstances. The exigent circumstances exception to the warrant requirement is narrowly drawn. The exception justifies immediate police action without obtaining a warrant if lives are threatened, a suspect's escape is imminent, or evidence is about to be destroyed.

*United States v. Ball*, 90 F.3d 260, 263 (8th Cir. 1996). In assessing the presence of such exigent circumstances, "[t]he question . . . is not whether there was actual probable cause and exigent circumstances, but whether the officers could reasonably have thought so." *Greiner v. City of Columbia*, 27 F.3d 1346, 1353 (8th Cir. 1994). To evaluate "whether a warrantless entry was justified by exigent circumstances, [a court must] consider the circumstances that confronted police at the time of the entry." *United States v. Leveringston,* 397 F.3d 1112, 1116 (8th Cir. 2005). Moreover, the fact that law enforcement officials had time to seek a warrant and failed to do so, "is not fatal to [a] finding that exigent circumstances justified [a warrantless] entry." *United States v. Palumbo,* 735 F.2d 1095, 1097 (8th Cir. 1984).

While exigent circumstances typically involve a law enforcement concern with the imminent destruction of evidence, the doctrine is not itself so limited. Of particular relevance to the facts of this case is the so-called "emergency aid doctrine" derived from *dicta* in the Supreme Court's decision in *Mincey v. Arizona,* 437 U.S. 385, 392, 98 S.Ct. 2408, 2413 (1978) ("[T]he Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within [a private residence] is in need of immediate aid."). Based on the *Mincey dicta*, several courts have designated a general "emergency aid" category as a special form of exigent circumstances sufficient to justify a warrantless entry into a home. *See, e.g., United States v. Beaudoin,* 362 F.3d 60, 66 (1st Cir. 2004); *United States v. Holloway,* 290 F.3d 1331, 1337 (11th Cir. 2002); *United States v. Richardson,* 208 F.3d 626, 630 (7th Cir. 2000). As explained by one court of appeals:

> Under this doctrine the police, in an emergency situation, may enter a residence without a warrant if they reasonably believe that swift action is required to safeguard life or prevent serious harm. To rely upon the doctrine, the government must show a reasonable basis, approximating probable cause, both for the officers' belief that an emergency exists and for linking the perceived emergency with the area or place into which they propose to intrude. The requisite inquiry must be undertaken in light of the totality of the circumstances confronting the officers, including, in many cases, a need for an on-the-spot judgment based on incomplete information and sometimes ambiguous facts bearing upon the potential for serious consequences.

*United States v. Martins*, 413 F.3d 139, 147 (1st Cir. 2005).[1]

Applying the exigent circumstances criteria to the facts of this case, the Court concludes that the officers were justified in their initial warrantless entry into Kelly's residence. At that time, the officers knew that Kelly had been under the influence of PCP and was exhibiting bizarre and erratic behavior, that Kelly had been seen running naked and yelling near his residence, that Kelly lived with a female and two children, that the female and two children had not been seen that day, and that the front door to Kelly's residence had been left open in the middle of December. While these facts would not have supported a detailed search of Kelly's residence, they did reasonably justify a sweep of the residence by the officers to ensure that the other inhabitants of the house were not injured. *Compare Maryland v. Buie,* 494 U.S. 325, 335, 110 S.Ct. 1093, 1099 (1990) ("protective sweeps" for officer safety are permissible so long as they are limited to a cursory inspection of spaces where a person may be found and last no longer than is necessary to dispel the reasonable suspicion of danger).

---

[1] While the Eighth Circuit has not formally utilized the term "emergency aid doctrine," it has applied the principle in its exigent circumstances jurisprudence under the related concept of the "community caretaker." *See*, *e.g.*, *United States v. Quezada*, 448 F.3d 1005, 1007 (8th Cir. 2006) ("A police officer may enter a residence without a warrant as a community caretaker where the officer has a reasonable belief that an emergency exists requiring his or her attention").

Inasmuch as the "emergency aid" sweep of the residence was justified, it then follows that the officers' plain view observation of the drug paraphernalia was not improper. Correspondingly, the inclusion of the information in the search warrant application was not erroneous. *Compare United States v. Cisneros-Gutierrez*, 598 F.3d 997, 1007 (8th Cir. 2010) ("Having determined that the entry and protective sweep were legal, the information included in the affidavit supporting the search warrant was not illegally obtained and it provided the requisite probable cause to support the search warrant.").

Accordingly, it is

**RECOMMENDED** that the Court, after making an independent review of the record and applicable law, enter an order **DENYING** the MOTION TO SUPPRESS EVIDENCE [Doc. #19] filed on March 3, 2016, by defendant Ray E. Kelly.

Counsel are reminded that each has 14 days from the date of receipt of a copy of this report and recommendation to file and serve specific objections to the same. A failure to file and serve timely objections shall bar attack on appeal of the factual findings in this report which are accepted or adopted by the district judge except upon the ground of plain error or manifest injustice.

                                              */s/ John T. Maughmer*
                                              **John T. Maughmer**
                                        **United States Magistrate Judge**